UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | |
|---|---|
| **CHRISTINA ZAMORA, Individually and as Next Friend of M.Z., et al.,** § § § | |
| *Plaintiffs,* § | Case No. 2:23-CV-00017-AM |
| § | |
| v. § | |
| § | |
| **DANIEL DEFENSE, LLC, et al,** § § | |
| *Defendants*. § § | |

### DEFENDANT PEDRO "PETE" ARREDONDO'S RESPONSE TO PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY

TO THE HONORABLE CHIEF UNITED STATES DISTRICT JUDGE ALIA MOSES:

Defendant Pedro "Pete" Arredondo files this response to Plaintiffs' Notice of Supplemental Authority (Dkt. 135) and respectfully shows as follows:

### I.
### SUMMARY

Plaintiffs point to the United States Department of Justice's *Critical Incident Review: Active Shooter at Robb Elementary School* (2024) (hereinafter "DOJ Report" or "Rpt."), as supplemental authority. But the DOJ Report provides no support for Plaintiffs' claims against Arredondo. The conclusions Plaintiffs point to in their notice substantively mirror the factual allegations Plaintiffs have already made—there's nothing new. Using the 20/20 vision of hindsight, Plaintiffs and the DOJ Report speculate that Arredondo and the other officers on scene should have breached rooms 111/112 before evacuating children and teachers in surrounding classrooms—children and students the DOJ Report concludes had already been struck by the

shooter's rounds.

Plaintiffs' bald assertions that Arredondo was deliberately indifferent fail when measured against their allegations and the DOJ Report's conclusions that Arredondo (1) ordered officers to clear children from surrounding classrooms (since the shooter's rounds were penetrating classroom walls) before performing a breach, (2) called Uvalde police "asking for a radio, rifle, and additional ammunition" and for the building to be "surrounded by as many AR-15s as possible" (since the shooter was armed with a "military combat weapon"), (3) "attempted to make verbal contact with [the shooter]" (in an attempt to negotiate the shooter's surrender), and, most importantly, (4) ran toward the shooting, took a position in the hallway, and never left.

Plaintiffs have already conceded nearly all their claims against Arredondo. *See* Dkt. 94 at 3. The claims against Arredondo that Plaintiffs have not yet conceded are implicitly conceded by their request to amend their Complaint. Plaintiffs point to nothing—no new factual allegations and no new legal theory—that would entitle them to amend. Plaintiffs' supplemental authority fails to show that Arredondo committed a constitutional violation, acted with deliberate indifference, or otherwise is not entitled to qualified immunity. The supplemental authority is just more speculation. Accordingly, Plaintiffs claims against Arredondo should be dismissed with prejudice.

## II.
## BACKGROUND

The DOJ Report simply does what it says, it attempts to provide "[a] full understanding of the response of local, state, and federal law enforcement agencies and personnel … [for the purpose of] addressing many unanswered questions, identifying crucial lessons learned, enhancing prevention initiatives, and improving future preparation for responses to mass shootings in other communities." (Rpt. at x). Although the DOJ Report is based on significant investigation, the DOJ Report did not adjudicate this matter. It certainly did not delve into whether any law enforcement

officer was civilly liable for the tragedy. "[A]s a matter of fact, [federal officials] did not find any federal crimes that could potentially be federally prosecuted."[1] The DOJ Report was meant to "aid in the healing process for the Uvalde victims, survivors, families, and community, and provide important guidance to the law enforcement field and to other stakeholders moving forward." (Rpt. at 6).

## III.
## ARGUMENT AND AUTHORITIES

### A. The DOJ Report Changes Nothing Regarding Plaintiffs' Factual Allegations.

Plaintiffs' Complaint (Dkt. 1) makes factual allegations[2] based on "a report issued by the Investigative Committee on Robb Elementary Shooting of the Texas House of Representatives (the 'Robb Committee Report')." Dkt. 1 at ¶89. Plaintiffs bring to the Court's attention the DOJ Report as supplemental authority. (Dkt. 135). Plaintiffs, in tacit admission that Arredondo's motion to dismiss is meritorious, seek leave to amend their Complaint. (Dkt. 135 at 3-4). However, Plaintiffs have failed to describe how Plaintiffs would amend their Complaint based on any differences between the DOJ Report and the Robb Committee Report.

In fact, with regard to Defendant Arredondo, Plaintiffs point to conclusions in the DOJ Report that substantively mirror the allegations in Plaintiffs' Complaint. Plaintiffs cite to their previous filings with regard to the conclusions in the DOJ Report regarding Arredondo:

- Finding that Defendant Pedro "Pete" Arredondo "was the de facto on-scene incident commander," DOJ Report at xvii, and he had the "necessary authority" to command officers that day, *id.* at xxi; additionally, Defendant Arredondo "authored" Defendant Uvalde Consolidated Independent School District's ("UCISD") "active shooter response

---

[1] Quote from Tony Plohetski of the *Austin-American Statesman*. Geoff Bennett, *DOJ issues scathing review of failed police response to Uvalde school shooting*, PBS Newshour (Jan. 18, 2024). https://www.pbs.org/newshour/show/doj-issues-scathing-review-of-failed-police-response-to-uvalde-school-shooting (last retrieved 02/07/2024).
[2] In ruling on a Rule 12(b) motion, a court must treat Plaintiffs' factual allegations in the most favorable light, but a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). For purposes of Defendant Arredondo's Motion to Dismiss Plaintiffs' Complaint (Dkt. 44), Arredondo has treated Plaintiffs' factual allegations as true. However, Plaintiffs' factual allegations have not been adjudicated and may be incorrect.

protocol," which "designates the school district police chief [Defendant Arredondo] as the incident commander," *id.* at 332, supporting Plaintiffs' argument that he was a policymaker making decisions on behalf of "UCISD," *see* **ECF No. 126 at 5-9**;

- Finding that "[a]t approximately 12:12, a law enforcement stack/entry team with a shield tried to enter the south side hallway and Chief Arredondo put up a hand as if to slow them down or stop them, saying 'Guys, hold on, we are going to clear the building first . . . empty these classrooms first,'" DOJ Report at 138, supporting Plaintiffs' argument that Defendant Arredondo took affirmative steps to trap Plaintiffs and other victims in the classrooms with an active shooter and cut off other sources of aid, *see* **ECF No. 77 at 15-16**.

Dkt. 135 at 3 (emphasis added). Plaintiffs offer the DOJ Report as supplemental authority, but utterly fail to describe how the conclusions in the DOJ Report change Plaintiffs' present factual allegations against Arredondo. Plaintiffs have already made these same factual allegations and have not pleaded a viable cause of action against Arredondo.

### B. The State-Created Danger Exception Does Not Overcome Arredondo's Qualified Immunity.

Plaintiffs' claims are still fundamentally flawed because Plaintiffs' state-created danger theory was not (and is not) clearly established law upon which Arredondo's liability can be established. "[T]he Fifth Circuit has never recognized th[e] 'state-created-danger exception.'" *Fisher v. Moore*, 62 F. 4th 912, 916 (5th Cir. 2023). The *Fisher* court went on to explain that "[i]n our published, and thus binding, caselaw, '[w]e have repeatedly declined to recognize the state-created danger doctrine.'" *Fisher*, 62 F.4th at 916 (citing *Joiner v. United States*, 955 F.3d 399, 407 (5th Cir. 2020). The legal analysis of Plaintiffs' claims against Arredondo is not changed by the DOJ Report.

### C. The DOJ Report Concludes Arredondo Cleared the Surrounding Classrooms And Gave the Go-Ahead at 12:27 P.M.

Likewise, the factual analysis is not changed. Plaintiffs seek in their Complaint (Dkt. 1) to hold Arredondo liable despite the fact that he: (1) ordered officers to clear children from

surrounding classrooms (since the shooter's rounds were penetrating classroom walls) before performing a breach; (2) he called Uvalde police "asking for a radio, rifle, and additional ammunition" and for the building to be "surrounded by as many AR-15s as possible" (since the shooter was armed with a "military combat weapon"); (3) he "attempted to make verbal contact with [the shooter]" (in an attempt to negotiate the shooter's surrender); and, most importantly, (4) he ran toward the shooting, took a position in the hallway, and never left.[3]

The conclusion in the DOJ Report is that Arredondo "responded in the capacity of an initial responder to an active shooter." (Rpt. at 132). He and four other officers "ran toward classrooms 111/112." (Rpt. at xiv). "[T]he officers experience[d] smoke from recent gun fire and dust from sheetrock," and two of the first responding officers were "hit with shrapnel from the shooter's gunfire from inside the classrooms." (Rpt. at 10). Arredondo, armed with only a handgun, called for backup. (Rpt. at 11). Realizing that the shooter's rounds were passing through walls into other classrooms, he sought to clear students and teachers from the danger zone. Students and teachers, including victims who had been hit through the walls by the shooter's rounds, were cleared from no less than seven classrooms in the danger zone. At 12:27 p.m., upon the evacuation of the final classroom, 109, "Arredondo gives the go-ahead to make entry into classrooms 111/112, stating, 'Got a team ready to go? Have at it.'" (Rpt. at 60).

### D. The DOJ Report Is Hindsight Speculation.

Arredondo responded as a first responder. When others failed to take command in a tense and uncertain situation, the DOJ Report concludes that Arredondo became the de facto commander. (Rpt. at xvii). The DOJ Report concludes Arredondo decided to evacuate the surrounding classrooms "to avoid more victims." (Rpt. at 55). Would additional students and

---

[3] Plaintiffs claim the better practice would have been to abandon the hallway and, therefore, the children. Dkt. 1 at ¶¶132, 151, 153, 158.

teachers in surrounding classrooms have been struck by the shooter's rounds if entry was made earlier? The DOJ Report appears to conclude the answer is "no." But that's just pure speculation. Speculation based on hindsight. But the Fifth Circuit has stressed that the question in the qualified immunity context is "'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Solis v. Serrett*, 31 F.4th 975, 983 (5th Cir. 2022) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Again, the DOJ Report acknowledges that students and teachers had already been struck by the shooter's rounds passing through walls. (Rpt. at 58, 100 ("Children were evacuated from room 109, including one child struck in the nose by shrapnel, along with a teacher who had suffered a gunshot wound from one of the subject's barrages of gunfire.")). The allegation is nothing new. Plaintiffs already allege in their Complaint that Arredondo opted to save the children and teachers in the surrounding classrooms before breaching. Dkt. 1 at ¶¶168, 174. Declaring it wrong to have evacuated the children and teachers in the surrounding classrooms is a declaration based on speculation.

The DOJ Report acknowledged that "recent training that UCISD PD provided seemed to suggest, inappropriately, that an active shooter situation can transition into a hostage or barricaded subject situation." (Rpt. at xvii); *see also* Dkt. 1 at ¶197 ("Defendants Pargas, Arredondo, and Nolasco, overrode active shooter protocol and made a new policy to treat [the shooter] as a barricaded subject."). In any event, this was the TCOLE[4]-approved training. There is no deliberate indifference on Arredondo's part. He did the best with the limited information provided to him in a tense, uncertain, and rapidly evolving situation.

The core of Plaintiffs' position is that officers' negligence can be a basis of liability.

---

[4] The Texas Commission on Law Enforcement ("TCOLE") is the Texas regulatory state agency responsible for licensing law enforcement, corrections, and telecommunications (911) personnel.

Plaintiffs are wrong. *Mason v. Faul*, 929 F.3d 762, 764 ("[O]fficer negligence is not a basis to deny qualified immunity."). Plaintiffs' reference to the DOJ Report does not create liability for Arredondo or provide them any way to amend to create liability for Arredondo.

### E. Plaintiffs' Request to Amend Their Amended Complaint Should Be Denied.

In tacit admission that Arredondo's motion to dismiss is meritorious, Plaintiffs ask that "they be permitted to amend their Complaint to cure any pleading deficiencies." Dkt. 135 at 3-4. Granting leave to amend is not required if the plaintiff has already pleaded its best case. *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009). Indeed, "where a court finds that the plaintiff has alleged his or her best case, dismissal with prejudice without an opportunity to amend is appropriate." *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999); *see also Adnexus Inc. v. Meta Platforms, Inc.*, No. 6:23-cv-152-JKP, 2024 WL 409738 at *5 (W.D. Tex. Feb. 2, 2024) ("[T]he Court finds that Plaintiff has stated its best case and thus declines to exercise its discretion to permit the filing of another amended complaint."). Plaintiffs cannot cure their pleading deficiencies. Plaintiffs point to conclusions in the DOJ Report, but the substance of those conclusions are already in Plaintiffs' Complaint. There is nothing new with regard to Plaintiffs' claims against Arredondo. Plaintiffs fail to show a basis for amending their Complaint. The Court should dismiss Plaintiffs' claims with prejudice.

## IV.
## CONCLUSION

Plaintiffs conceded the validity of Defendant Arredondo's arguments seeking dismissal of (1) Plaintiffs' claims against Arredondo in his official capacity; and (2) Plaintiffs' claims for supervisor liability. Plaintiffs have failed to address Defendant Arredondo's argument that immediate dismissal of Plaintiffs' wrongful-death claim against Arredondo is warranted pursuant to Section 101.106 of the Texas Tort Claims Act. Plaintiffs have failed allege facts sufficient to

establish a constitutional seizure of M.Z. and K.T. and have failed to meet their burden to allege facts sufficient to defeat Defendant Arredondo's entitlement to qualified immunity with respect to that claim. Likewise, Plaintiffs have failed to meet their burden to defeat Defendant Arredondo's entitlement to qualified immunity with respect to Plaintiffs' claims under the state-created-danger and special-relationship theories. The Court should, therefore, recognize Defendant Arredondo's entitlement to qualified immunity from Plaintiffs' claims, and dismiss with prejudice Plaintiffs' claims based on lack of jurisdiction, a failure to state a claim upon which relief can be granted, and/or based on qualified immunity.

Respectfully submitted,

*/s/ Thomas P. Brandt*
**THOMAS P. BRANDT**
State Bar No. 02883500
tbrandt@fhmbk.com
**LAURA O'LEARY**
State Bar No. 24072262
loloeary@fhmbk.com
**CHRISTOPHER D. LIVINGSTON**
State Bar No. 24007559
clivingston@fhmbk.com

**FANNING HARPER MARTINSON BRANDT & KUTCHIN**
A Professional Corporation
One Glen Lakes
8140 Walnut Hill Lane, Suite 200
Dallas, Texas 75231
(214) 369-1300 (office)
(214) 987-9649 (telecopier)

**ATTORNEYS FOR DEFENDANT PEDRO "PETE" ARREDONDO**

## CERTIFICATE OF SERVICE

      I hereby certify that on the 7th day of February 2024, I electronically filed the foregoing document with the Clerk of the Court through the ECF system and an email notice of the electronic filing was sent to all attorneys of record.

      */s/ Thomas P. Brandt*
      **THOMAS P. BRANDT**